**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No.**

| | |
|---|---|
| ANTONIO GOMEZ, a Florida resident, RICARDO ALEJANDRO GARCIA, a Florida resident, individually, and on behalf of others similarly-situated,<br><br>    Plaintiffs,<br>  v.<br><br>FANDUEL, INC., a Delaware corporation and DRAFTKINGS, INC., a Delaware corporation, SAAHIL SUD, a Massachusetts resident, DREW DINKMEYER, a Florida resident, ETHAN HASKELL, a Massachusetts resident, MATTHEW BOCCIO, a New York resident,<br><br>    Defendants. | CLASS ACTION |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Antonio Gomez and Ricardo Alejandro Garcia, individually (collectively "Class Representatives"), and on behalf of others similarly situated ("Class Members"), bring this nationwide[1] class action and subclass for Florida residents against above-captioned Defendants for claims of negligence, breach of contract, declaratory and supplementary relief, injunctive relief, Civil RICO, and civil conspiracy for damages.

**JURISDICTION, PARTIES AND VENUE**

**Plaintiffs**

---

[1] Except for residents of the states of Arizona, Iowa, Louisiana, Montana, and Washington.

1.      At all times relevant hereto, Plaintiff, Antonio Gomez, was a resident of Miami, Miami-Dade County, Florida, and placed wagers with FanDuel via FanDuel's website, which included Terms of Use.  (See Exhibit "A").

2.      At all times relevant hereto, Plaintiff, Ricardo Alejandro Garcia, was a resident of Miami, Miami-Dade County, Florida, and placed wagers with Defendant DraftKings, Inc. ("DraftKings") via DraftKings' website, which included Terms of Use.  (See Exhibit "B").

<u>**Defendants**</u>

3.      At all times relevant hereto, Defendant FanDuel was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located in New York City, New York.

4.      Defendant FanDuel offers its service through its internet site throughout the nation, internationally, including the State of Florida.  FanDuel, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein nationwide and in the state of Florida.

5.      Defendant FanDuel is a fantasy sports website that permits individuals to play fantasy sports games. To begin playing on FanDuel, an individual is required to place a deposit and create a FanDuel account. That person can then use the money on deposit to pay entry fees to partake in daily fantasy sports games. At the end of the sports day, the winner of each fantasy contest is then awarded prize money which is inserted into their FanDuel account.

6.     At all times relevant hereto, Defendant DraftKings was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located in Boston, Massachusetts.

7.     Defendant DraftKings offers its service through its internet site throughout the nation, internationally, including the State of Florida.  DraftKings, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein nationwide and in the state of Florida.

8.      Defendant DraftKings is a fantasy sports website that permits individuals to play fantasy sports games. To begin playing on DraftKings, an individual is required to place a deposit and create a DraftKings account. That person can then use the money on deposit to pay entry fees to partake in daily fantasy sports games. At the end of the sports day, the winner of each fantasy contest is then awarded prize money which is inserted into their DraftKings account.

9.     At all times relevant hereto, Defendant Saahil Sud was and is a Massachusetts resident, residing at 120 Kingston Street, Penthouse 2402, Boston, Massachusetts.

10.     Upon information and belief, Mr. Sud is an Apex predator or Shark bettor in Defendants FanDuel and DraftKings' fantasy sports games, as described herein.

11.     At all times relevant hereto, Defendant Drew Dinkmeyer was and is a Florida resident, residing at 709 SE 6th Court, Fort Lauderdale, 709 SE 6th Court, Fort Lauderdale, 33301.

12.     Upon information and belief, Mr. Dinkmeyer is an Apex predator or Shark bettor in Defendants FanDuel and DraftKings' fantasy sports games, as described herein.

13.     At all times relevant hereto, Defendant Ethan Haskell was and is a Massachusetts resident residing at 709 SE 6th Court, Ft. Lauderdale, FL 33301. Upon information and belief, Mr. Haskell is an employee of DraftKings that used insider information to wager on fantasy sports on Defendants DraftKings and FanDuel's websites.

14.     At all times relevant hereto, Defendant Matthew Boccio was and is a New York resident residing at 24 Kenworth Road, Port Washington, New York. Upon information and belief, Mr. Boccio is an employee of FanDuel that used insider information to wager on fantasy sports on Defendants DraftKings and FanDuel's websites.

15.     At all times relevant hereto, Defendants, FanDuel and DraftKings, acted by and through their employees, agents, and representatives who were all working within the scope of their employment, agency, and representative capacity with Defendants and working in furtherance of Defendants' interests.

16.     All conditions precedent to the bringing of this action have occurred, have been waived or have been otherwise satisfied.

17.     The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

18.     The putative classes consist of a thousand or more people.

19.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(d).

20.     Venue is proper within this District because a substantial part of the events giving rise to the claims occurred and continue to occur in this District.

4

## **Background of Fantasy Sports**

21.     To begin playing on DraftKings or FanDuel, an individual is required to place a deposit and create an account. That deposit can then be used to pay entry fees to partake in daily fantasy sports games.  At the end of the sports day, the winner of each fantasy contest is then awarded prize money which is inserted into their DraftKings account.

22.     To create an account with DraftKings or FanDuel, a user must agree to Terms and Conditions in a multi-page internet User Agreement ("User Agreement").  The User Agreement is unconscionable, contrary to public policy, unmanageable and is intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

23.     Congress has deemed fantasy sports a game of skill, not of chance. See 31 U.S.C. §§ 5361-5367. Defendants have attempted to take advantage of 31 U.S.C. §§ 5361-5367 to legitimize fantasy sports.

24.     Daily fantasy sports have recently grown into an industry projected to receive approximately $31 billion in player entry fees by the year 2020.

25.     In the first week of the 2015 NFL season alone, FanDuel and DraftKings were expected to receive a combined $60 million in entry fees.

26.     The competitions vary by sport and format, but the most popular forum is daily or weekly fantasy football. In a typical competition, customers "buy-in"—anywhere from $1 to thousands of dollars—against other participants with hopes that they will field the best fantasy football "team." The basic format for fantasy sports is best typified by a typical bet on a NFL game.

27.     The user pays an entry fee that varies in amount.

28.     One example of a game that users may play provides a user a budget to spend on players that are competing in games that week in the NFL.  The budget is an artificial number, $60,000 for example.  NFL players are assigned a salary by Defendants DraftKings or FanDuel. Users, bound by a fictitious salary cap, select a roster of players they believe will perform well in terms of individual statistics. The user selects their team by player positions based on the salaries assigned by DraftKings or FanDuel, not to exceed the salary cap and budget.

29.      At a time certain before the NFL games begin, no further entries are allowed and a user sets their roster. The NFL players each earn points for the user based upon their performance in the games. The user with the highest total of points in relation to other users in that game wins.

30.     Defendants generate their revenue by hosting competitions among individual users and, for their services, take a "rake" of the earnings.

31.     Though the rake varies by game type and amount, it normally hovers around 10 percent. In a typical competition wherein 10 players bet $10 each in a winner-takes-all format, the champion will walk away with $90 of the $100, with Defendants, FanDuel and DraftKings, taking its 10 percent rake of $10.

32.     The amount of the prize in a fantasy sports game is set in advance of the game even though the number of users who will enter the game is unknown.  An "overlay" occurs when the amount of the prize exceeds the amount of money received by DraftKings or FanDuel from the buy-ins, or entry fees, for that game, DraftKings and FanDuel have intentionally allowed Apex predators to flood their games, because the money received from increased entries, or buy-ins, paid by Apex predators provides coverage to DraftKings and FanDuel for the

overlay.  This creates a situation whereby Apex predators gain a significant statistical advantage over bona-fide users.

33.     To lure customers, Defendants, FanDuel and DraftKings websites saturate television, particularly commercials airing during sporting events, with seductive advertising. In 2014, DraftKings alone had 1,782 separate television ads.  One advertisement for Defendant DraftKings stated "DraftKings combines one-day fantasy sports with winning life-changing amounts of cash." Another tells the story of DraftKings customer Derek Bradley, a former accountant. "DraftKings one-day fantasy baseball took him from a guy with holes in his underpants," the announcer states, "to a guy with bikini models in them!" The commercial promises that if one signs up for DraftKings, the site will "double [his or her] deposit."

34.     DraftKings alone spent approximately $23.6 million on television advertisements in September 2015.

35.     Internet advertisements, on FanDuel and DraftKings' websites and elsewhere, likewise funnel significant business to their online betting interface.

### DEFENDANTS' DRAFTKINGS AND FANDUEL'S UNFAIR AND DECEPTIVE BUSINESS PRACTICES

### DraftKings and FanDuel Allow "Apex Predator" or "Shark" Bettors to Take Unfair Advantage of the Class Representatives and Class Members

36.     Defendants DraftKings and FanDuel enticed the Class Representatives and Class Members to their respective websites via advertisements promising fantastic returns and winnings on fantasy sports games.

37.     While any player may get lucky on the back of a handful of entries into Defendants DraftKings' and FanDuel's games, over time nearly all of the prize money flows to a

tiny elite equipped with elaborate statistical modeling and automated tools that can manage hundreds of entries at once and identify the weakest opponents.

38.     These elite players are known in the fantasy sports gaming industry as "Apex predator" bettors or "Shark" bettors.

39.     Apex predator and Shark bettors use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over unsuspecting Class Representatives and Class Members.

40.     FanDuel allows, at its discretion, the use of "robots," "spiders," "scrapers," or "sniping software" as long as a user obtains "express written permission." Ex. A. Nonetheless, FanDuel does not disclose to other users such as the Class Representatives and Class Members if an Apex predator or Shark bettor has used "robots," "spiders," "scrapers," or "sniping software" that gives the Apex predator or Shark bettor an unfair advantage over the Class Representatives and Class Members.

41.     DraftKings acknowledges that it may permit the use of scripts on its website and to contact DraftKings if a user wants to use a script. Ex. B.  But DraftKings did not disclose to Plaintiff and Class Members that an Apex predator or Shark bettor is using a script that gives the Apex predator or Shark bettor an unfair advantage.

42.     Defendants DraftKings and FanDuel have failed to disclose to Class Representatives and Class Members that Apex predator and Shark bettors have an unfair advantage by obtaining better information from DraftKings and FanDuel – a situation that is tantamount to insider trading because the information was not provided to Class Representatives and Class Members.

**Draft Kings and FanDuel Allow Their Employees to Make Bets with Access to Inside Information without Disclosure to the Class Representatives and Class Members**

43.     Until October 6, 2015, Defendant DraftKings allowed its own employees to make bets on its own website and on FanDuel's website.

44.     Until October 6, 2015, Defendant FanDuel allowed its own employees to make bets on its own website and DraftKings' website.

45.     On October 6, 2015, the New York's Attorney General opened an inquiry as to each of the Defendants. Exhs. C-D, correspondence dated Oct. 6, 2015 from State of New York's Office of Attorney General to Defendants FanDuel and DraftKings, respectively, attached hereto.

46.     The New York Attorney General's inquiry was opened to investigate "legal questions relating to the fairness, transparency and security of [FanDuel and DraftKings] and the reliability of representations … [the companies have] made to customers." *Id.*

47.     The New York Attorney General's inquiry arose due to reports that DraftKings' employee Ethan Haskell "inadvertently" released data regarding the lineups created by DraftKings users the third week of the NFL season in late September. That same weekend, Mr. Ethan Haskell, a midlevel content manager for DraftKings won $350,000.00 at FanDuel.

48.     When the information regarding Mr. Haskell's release of information and winnings became public it was only then that Defendants DraftKings and FanDuel prohibited their employees from betting on their own and each other's websites.

49.     Defendants DraftKings and FanDuel acted in concert and released a joint press statement after Mr. Haskell's story became public. Ex. E.

50.     Defendants DraftKings and FanDuel failed to inform or disclose to Class Representatives and Class Members that employees of the respective Defendants are privy to

9

crucial statistical information, including lineup data, insider information, that the Class Representatives and Class Members do not have access to.

51.     According to industry experts, the value of knowing beforehand which players will be used the most in the sports provides that user with knowledge that is an unfair advantage.

52.     Because of the massive number of entries with DraftKings and FanDuel's fantasy sports games, it is difficult to win a contest with a lot of players that are commonly owned. Rostering some players with low ownership percentages and a high upside is a strategy that many players employ. If given information before a fantasy sports game starts on DraftKings or FanDuel as to what players are being used most in a particular game, that information is unfairly advantageous to the person receiving the information and constitutes an unfair advantage especially to an unknowing Class Representative and Class Member.

53.     The information that Defendants DraftKings and FanDuel's employees have is unfairly advantageous to those DraftKings and FanDuel employees that bet on their own websites and each other's websites.

### Defendant FanDuel and DraftKings' User Agreements Are Unconscionable, Illusory and Unenforceable Against Class Representatives and Class Members

54.     The multi-page internet user agreement is procedurally and substantively unconscionable, contrary to public policy, unmanageable and is intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

55.     Plaintiff and the class were induced into placing wagers in what was supposed to be a fair game of skill without the potential for insiders to use non-public information to compete against them.

10

## CLASS ACTION ALLEGATIONS

### Plaintiffs' Classes and Subclasses

56.     Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure,

Plaintiffs bring this action on behalf of themselves and two Classes initially defined as follows:

> "FanDuel Class":  All individuals and entities who entered into a User Agreement with FanDuel and made a wager in a fantasy sports game from February 1, 2012 through October 6, 2015.

> "DraftKings Class":  All individuals and entities who entered into a User Agreement with DraftKings and made a wager in a fantasy sports game from February 1, 2012 through October 6, 2015.

> "Florida FanDuel Subclass": All individuals and entities who were Florida residents and entered into a User Agreement with FanDuel and made a wager in a fantasy sports game from February 1, 2012 through October 6, 2015.

> "Florida DraftKings Subclass":  All individuals and entities who entered into a User Agreement with DraftKings and made a wager in a fantasy sports game from February 1, 2012 through October 6, 2015.

> "The Saahil Sud Class":  All individuals and entities who entered into a User Agreement with DraftKings or FanDuel that were in the top 1.5% of winners on DraftKings and/or FanDuel at any point in time from February 1, 2012 through October 6, 2015 and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

> "The Drew Dinkmeyer Defendant Class": All individuals and entities who entered into a User Agreement with DraftKings or FanDuel that were in the top 1.5% of winners on DraftKings and/or FanDuel at any point in time from February 1, 2012 through October 6, 2015, were Florida residents, and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

> "The Matthew Boccio FanDuel Employee Class": All individuals

11

and entities who entered into a User Agreement with DraftKings or FanDuel and were employees of FanDuel and made a wager in a FanDuel or DraftKings fantasy sports game utilizing insider information with FanDuel or DraftKings from February 1, 2012 through October 6, 2015.

"The Ethan Haskell DraftKings' Employee Class": All individuals and entities who entered into a User Agreement with DraftKings or FanDuel and were employees of DraftKings and made a wager in a FanDuel or DraftKings fantasy sports game utilizing insider information with FanDuel or DraftKings from February 1, 2012 through October 6, 2015.

57.     Excluded from the Classes are Defendants FanDuel, DraftKings, Mr. Sud, Mr. Dinkmeyer, Mr. Boccio, Mr. Haskell, Defendant Class Members and their employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees. Residents of the states of Arizona, Iowa, Louisiana, Montana, and Washington are also excluded.

## Ascertainability

58.     The Classes can be readily identified using Defendants FanDuel and DraftKings User Agreements, payment records, payout records and other information kept by Defendants FanDuel and DraftKings or third parties in the usual course of business and within their control.

## Numerosity

59.     Defendant FanDuel admits to in excess of 1 million paid active users, the number of Class Members is great enough that joinder is impracticable.

60.     Upon information and belief, Defendant DraftKings has in excess of 1 million paid active users, the number of Class Members is great enough that joinder is impracticable.

## Typicality

61.     Plaintiffs' claims are typical of the claims of the Class, as Plaintiff and Class Members alike were victims of Defendant FanDuel's common course of conduct, to wit: a) FanDuel does not disclose to other users such as Plaintiff and Class Members if a particular user uses "robots," "spiders," "scrapers," or "sniping software" that may give those users an unfair advantage over Plaintiffs and Class Members; b) FanDuel failed to disclose to Class Representatives and Class Members that it created a situation whereby Apex predators and Shark bettors have an unfair advantage by obtaining better information from FanDuel that is tantamount to insider trading and was not provided to Class Representatives and Class Members; and c) FanDuel's multi-page internet User Agreement is unconscionable, contrary to public policy, unmanageable and is intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

62.     Plaintiffs' claims are typical of the claims of the Class, as Plaintiff and Class Members alike were victims of Defendant DraftKings common course of conduct, to wit: a) FanDuel does not disclose to other users such as Plaintiff and Class Members if a particular user uses "scripts" that may give those users an unfair advantage over Plaintiffs and Class Members; b) FanDuel failed to disclose to Class Representatives and Class Members that it  created a situation whereby Apex predators and Shark bettors have an unfair advantage by obtaining better information from DraftKings that is tantamount to insider trading and was not provided to Class Representatives and Class Members; and c) DraftKings' multi-page internet User Agreement is unconscionable, contrary to public policy, unmanageable and is intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

**Adequacy of Representation**

63.     Plaintiffs will fairly and adequately protect the Classes' interests and have retained counsel competent and experienced in class-action litigation.  Plaintiffs' interests are coincident with, and not antagonistic to, absent Class Members' interests because by proving their individual claims they will necessarily prove the liability of all Defendants to the Plaintiff Classes.  Plaintiffs are also cognizant of, and determined to, faithfully discharge their fiduciary duties to the absent Class Members as the Class representatives.

64.     Plaintiffs' counsel have substantial experience in prosecuting class actions. Plaintiffs and counsel are committed to vigorously prosecuting this action, have the financial resources to do so, and do not have any interests adverse to the Classes.

**Commonality and Predominance**

65.     There are numerous questions of law and fact the answers to which are common to each Class and predominate over questions affecting only individual Members, including the following:

> a)      whether the multi-page internet User Agreements for Defendant FanDuel are unconscionable, contracts of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Class Representatives and Class Members;
>
> b)      whether FanDuel failed to disclose to Class Representatives and Class Members if a particular user uses "robots," "spiders," "scrapers," or "sniping software" that may give those users an unfair advantage over Class Representatives and Class Members;
>
> c)      whether FanDuel failure to disclose to Class Representatives and Class Members if a particular user uses "robots," "spiders," "scrapers," or "sniping software" was negligent;
>
> d)      whether FanDuel breached its User Agreement;

14

e)      whether FanDuel failed to disclose to Class Representatives and Class Members that it setup a system whereby Apex predator or Shark bettors have an unfair advantage by obtaining better information from FanDuel that is tantamount to insider trading and was not provided to Class Representatives and Class Members;

f)      whether FanDuel's failure to disclose to Class Representatives and Class Members to Class Representatives and Class Members that it setup a system whereby Apex predator or Shark bettors have an unfair advantage by obtaining better information from FanDuel that is tantamount to insider trading and was not provided to Class Representatives and Class Members was negligent;

g)      whether FanDuel failed to disclose to Class Representatives and Class Members that its employees are privy to crucial statistical information, including lineup data, insider information, and play on FanDuel's fantasy sports games against FanDuel users;

h)      whether FanDuel failure to disclose to Class Representatives and Class Members that its employees are privy to crucial statistical information, including lineup data, insider information, and play on FanDuel's fantasy sports games against FanDuel users was negligent;

i)      whether the multi-page internet User Agreements for Defendant DraftKings are unconscionable, contracts of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Class Representatives and Class Members;

j)      whether DraftKings failed to disclose to Class Representatives and Class Members the use of scripts on its website that may give those users an unfair advantage over Class Representatives and Class Members;

k)      whether DraftKings breached its User Agreement;

l)      whether DraftKings failure to disclose to Class Representatives and Class Members the use of scripts on its website that may give those users an unfair advantage over Class Representatives and Class Members was negligent;

m)      whether DraftKings failed to disclose to Plaintiff and Class Members that it created a situation whereby Apex predators and Shark bettors have an unfair advantage by obtaining better

15

information from DraftKings that is tantamount to insider trading and was not provided to Plaintiff and Class Members;

n)      whether DraftKings failure to disclose to Class Representatives and Class Members that it created a situation whereby Apex predators and Shark bettors have an unfair advantage by obtaining better information from DraftKings that is tantamount to insider trading and was not provided to Class Representatives and Class Members was negligent;

o)      whether DraftKings failed to disclose to Class Representatives and Class Members that its employees are privy to crucial statistical information, including lineup data, insider information, and play on FanDuel's fantasy sports games against FanDuel users;

p)      whether DraftKings failed to disclose to Class Representatives and Class Members that its employees are privy to crucial statistical information, including lineup data, insider information, and play on FanDuel's fantasy sports games against FanDuel users was negligent;

q)      whether DraftKings and FanDuel's conduct was "unfair," "deceptive" or "unconscionable" under the Florida's Deceptive and Unfair Trade Practices Act;

r)      whether DraftKings and FanDuel's conduct violated civil RICO;

s)      whether DraftKings and FanDuel's fantasy sports betting games are games of skill;

t)      whether DraftKings and FanDuel's conduct violates the Federal Trade Commission Act;

u)      whether Class Representatives and Class Members are entitled to injunctive relief; and,

v)      whether DraftKings and FanDuel's conduct injured Class Representatives and Class Members and, if so, the extent of the damages.

**Superiority and Manageability**

66.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy since joinder of all the individual Class Members is

16

impracticable.  Likewise, because the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

67.    The prosecution of separate actions by the individual Class Members would also create a risk of inconsistent or varying adjudications for individual Class Members, which could also establish incompatible standards of conduct for the Defendants. The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

**Defendant Classes**

68.    In addition to the Plaintiff Classes, this case also seeks certification of Defendant Classes, defined as follows:

> "The Saahil Sud Class":  All individuals and entities who entered into a User Agreement with DraftKings or FanDuel that were in the top 1.5% of winners on DraftKings and/or FanDuel at any point in time from February 1, 2012 through October 6, 2015 and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.
>
> "The Drew Dinkmeyer Defendant Class: All individuals and entities who entered into a User Agreement with DraftKings or FanDuel that were in the top 1.5% of winners on DraftKings and/or FanDuel at any point in time from February 1, 2012 through October 6, 2015, were Florida residents, and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.
>
> "The Matthew Boccio FanDuel Employee Class": All individuals and entities who entered into a User Agreement with DraftKings or FanDuel and were employees of FanDuel and made a wager in a

17

FanDuel or DraftKings fantasy sports game utilizing insider information with FanDuel or DraftKings from February 1, 2012 through October 6, 2015.

"The Ethan Haskell DraftKings' Employee Class": All individuals and entities who entered into a User Agreement with DraftKings or FanDuel and were employees of DraftKings and made a wager in a FanDuel or DraftKings fantasy sports game utilizing insider information with FanDuel or DraftKings from February 1, 2012 through October 6, 2015.

**Numerosity**

69.     The proposed Saahil Sud Defendant Class is so numerous that joinder of all Members would be impracticable. Upon information and belief, hundreds if not thousands of players were in the top 1.5% of winners on FanDuel and DraftKings and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

70.     Upon information and belief, Mr. Sud enters hundreds of daily contests on baseball and football at with DraftKings and FanDuel under the name "maxdalury" his participation in the contests has affected thousands of Class Members, the number of Class Members is great enough that joinder is impracticable.

71.     Upon information and belief, Mr. Dinkmeyer enters hundreds of daily contests on baseball and football at with DraftKings and FanDuel under the name "Dinkpiece" his participation in the contests has affected thousands of Class Members, the number of Class Members is great enough that joinder is impracticable.

72.     Upon information and belief, Mr. Dinkmeyer enters hundreds of daily contests on baseball and football at with DraftKings and FanDuel and his participation in the contests has

affected thousands of Class Members, the number of Class Members is great enough that joinder is impracticable.

73.     The proposed Drew Dinkmeyer Defendant Class is so numerous that joinder of all Members would be impracticable. Upon information and belief, hundreds if not thousands of players were in the top 1.5% of winners on FanDuel and DraftKings and used  "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

74.     The proposed Matthew Boccio FanDuel Employee Defendant Class is so numerous that joinder of all Members would be impracticable. Upon information and belief, dozens of FanDuel employees entered into a User Agreement with DraftKings or FanDuel and were employees of FanDuel and made a wager in a fantasy sports game with FanDuel or DraftKings utilizing insider information from February 1, 2012 through October 6, 2015.

75.     The proposed Ethan Haskell DraftKings' Employee Defendant Class is so numerous that joinder of all Members would be impracticable. Upon information and belief, dozens of DraftKings' employees entered into a User Agreement with DraftKings or FanDuel and were employees of DraftKings and made a wager in a fantasy sports game with FanDuel or DraftKings utilizing insider information from February 1, 2012 through October 6, 2015.

**Adequacy and Typicality**

76.     Saahil Sud is an adequate and typical class representative for the Defendant Class because, upon information and belief, he utilized "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel. Mr. Sud will fairly

and adequately represent and protect the interests of the Members of the Defendant Class because he bears a substantial financial interest in the outcome of this litigation and his interests are coincident with, and not antagonistic to, the other Defendant Class Members' interests. Additionally, Mr. Sud, upon information and belief has substantial financial resources and access to competent counsel.

77. Drew Dinkmeyer is an adequate and typical class representative for the Defendant Class because, upon information and belief, he utilized "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel. Mr. Dinkmeyer is a Florida resident and his acts and omissions took place in the state of Florida. Mr. Dinkmeyer will fairly and adequately represent and protect the interests of the Members of the Defendant Class because he bears a substantial financial interest in the outcome of this litigation and his interests are coincident with, and not antagonistic to, the other Defendant Class Members' interests. Additionally, Mr. Dinkmeyer, upon information and belief, has substantial financial resources and access to competent counsel.

78. Ethan Haskell is an adequate and typical class representative for the Ethan Haskell DraftKings' Employee Defendant Class because, upon information and belief, he played fantasy sports betting games on DraftKings and FanDuel utilizing insider information from DraftKings.

79. Matthew Boccio is an adequate and typical class representative for the Matthew Boccio FanDuel Employee Defendant Class because, upon information and belief, he played fantasy sports betting games on DraftKings and FanDuel utilizing insider information from FanDuel.

## Commonality and Predominance

80.     The claims against the Defendant Class Members involve questions of law and

fact common to the Defendant Class Members that predominate over any potential questions

affecting only individual Members of the Defendant Class, including among other things:

a)      whether Mr. Sud and other Defendant Class Members used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods gave an unfair advantage to Mr. Sud and Defendant Class Members over Plaintiffs and Class Members in DraftKings and FanDuel's fantasy sports betting games;

b)      whether Mr. Sud and other Defendant Class Members disclosed to DraftKings or FanDuel that they were using "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods gave an unfair advantage to Mr. Sud and Defendant Class Members;

c)      whether DraftKings and FanDuel gave Mr. Sud and other Defendant Class Members permission to use "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods that gave an unfair advantage over Plaintiffs and Class Members to Mr. Sud and Defendant Class Members;

d)      whether Mr. Dinkmeyer and other Defendant Class Members used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods gave an unfair advantage to Mr. Dinkmeyer and other Defendant Class Members over Plaintiffs and Class Members in DraftKings and FanDuel's fantasy sports betting games;

e)      whether Mr. Dinkmeyer and other Defendant Class Members disclosed to DraftKings or FanDuel that they were using "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods gave an unfair advantage to Mr. Dinkmeyer and Defendant Class Members;

f)      whether DraftKings and FanDuel gave Mr. Dinkmeyer and other Defendant Class Members permission to use "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods that gave an unfair advantage over Plaintiffs and Class Members to Mr. Dinkmeyer and Defendant Class Members;

g)      whether Ethan Haskell and other DraftKings' employees played fantasy sports betting games on DraftKings and FanDuel utilizing insider information from DraftKings and whether such information

21

was an unfair advantage over Plaintiff and Class Members;

h)     whether Matthew Boccio and other FanDuel employees played fantasy sports betting games on DraftKings and FanDuel utilizing insider information from FanDuel and whether such information was an unfair advantage over Plaintiff and Class Members; and,

i)     whether the Defendant Class Members' conduct injured the Plaintiff Class Members and, if so, the extent of the damages.

81.     The Defendant Classes share a juridical link in that all Members of the Defendant Classes participated in a DraftKings of FanDuel fantasy sports games with an unfair advantage that was undisclosed to Plaintiffs and Class Members.

82.      Certification of the Defendant Class is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because the Defendant Classes have acted with respect to the Plaintiffs' Class in a manner generally applicable to each Class Member.

83.     Certification of the Defendant Classes is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because there is a well-defined community of interest in the questions of law and fact involved in the action, which affect all Members of the Defendant Classes, and questions of law or fact common to the respective Members of the Defendant Classes predominate over any potential questions of law or fact affecting only individual Members of the Defendant Classes.

**Superiority and Manageability**

84.     This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, the Defendant Classes would likely incur significantly greater expenses in separately defending themselves in this action, or in numerous individual actions, than they would incur in their defense of a Defendants' class action.

22

85.    A class action involving both Plaintiff Classes and a Defendant Classes is an appropriate method for the adjudication of the controversy in that it will permit a large number of claims against a large number of defendants to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution and/or redundant defense of numerous individual actions and the duplication of discovery, effort, expense, and the burden on the courts that individual actions would create.

86.    Defendant Classes, whether as to liability as a whole or as to certain common issues, provides a superior method to adjudicate this matter by permitting the collaborative defense of claims involving common legal issues, outweighing any difficulties that might be argued with regard to the management of the class action.

## COUNTS

87.    For ease of reference, the claims that follow are summarized in the table below:

| Count | Asserted By | Asserted Against | Claim |
|-------|-------------|------------------|-------|
| I | Plaintiff Gomez | FanDuel | Negligence |
| II | Plaintiff Gomez | FanDuel | Breach of Contract (good faith & fair dealing) |
| III | Plaintiff Gomez | FanDuel | Declaratory & Injunctive Relief |
| IV | Plaintiffs Gomez & Garcia | Matthew Boccio FanDuel Employee Defendant Class | Negligence |
| V | Plaintiff Garcia | DraftKings | Negligence |
| VI | Plaintiff Garcia | DraftKings | Breach of Contract (good faith & fair dealing) |
| VII | Plaintiff Garcia | DraftKings | Declaratory & Injunctive Relief |
| VIII | Plaintiffs Gomez & Garcia | Ethan Haskell DraftKings' Employee Defendant Classs | Negligence |
| IX | Plaintiffs Gomez & Garcia | DraftKings, FanDuel, Sud Defendant Class, Dinkmeyer Defendant Class, Matthew Boccio FanDuel Defendant | Civil Rico |

| | | | |
|---|---|---|---|
| | | Class and Ethan Haskell FanDuel Defendant Class | |
| X | Plaintiffs Gomez & Garcia | DraftKings, FanDuel, Sud Defendant Class, Dinkmeyer Defendant Class, Matthew Boccio FanDuel Defendant Class and Ethan Haskell FanDuel Defendant Class | Civil Conspiracy |
| XI | Plaintiffs Gomez (on behalf of Florida subclass) | FanDuel | Florida Deceptive and Unfair Trade Practices Act |
| XII | Plaintiff Garcia (on behalf of Florida subclass) | DraftKings | Florida Deceptive and Unfair Trade Practices Act |

## COUNT I-NEGLIGENCE

*Plaintiff Gomez v. FanDuel*

88.     Plaintiff Gomez adopts and restates paragraphs 1, 3-5, 9-59, 61, and 63-67, as if fully set forth herein.

89.     Defendant FanDuel, at all times relevant, had a duty to Plaintiffs and Class Members who were participating in its fantasy sports betting games to act reasonably and with due care in administering its fantasy sports betting games so as not to allow other users of FanDuel an unfair advantage at playing the alleged games of "skill" administered by FanDuel. Defendant's duty includes, but was not limited to the following:

(a)     preventing users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)     disclosing to Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers,"

"sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)     warning Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)     preventing its own employees and DraftKings' employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     disclosing to Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)     warning Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(g)     exercising reasonable care in the administration of fantasy sports betting games to prevent users from utilizing inside information and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

90.     Defendant, at all times relevant, failed in its duty to Plaintiffs and Class Members who were participating in its fantasy sports betting games to act reasonably and with due care in

administering its fantasy sports betting games so as not to allow other users of FanDuel an unfair advantage at playing the alleged games of "skill" administered by FanDuel. Defendant's breaches of its duty includes, but was not limited to the following:

(a)     failing to prevent users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)     failing to disclose to Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)     failing to warn Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)     failing to prevent its own employees and DraftKings' employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     failing to disclose to Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)     failing to warn Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(g)     otherwise failing to exercise reasonable care in the administration of fantasy sports betting games to prevent users from utilizing inside information and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

91.     Defendant knew or should have known that its wrongful acts and omissions would cause serious injury to Plaintiff Class Representatives and Class Members.

92.     Defendant's conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

93.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have incurred economic damages in the form of their user fees and wagers they placed on Defendant's fantasy sports betting games.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Classes;

b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c.   appointment of the undersigned counsel as counsel for the Plaintiffs' Classes;

d.   compensatory damages;

e.   pre and post-judgment interest;

f.   an award of taxable costs; and,

g.   any and all such further relief as this Court deems just and proper.

## COUNT II-BREACH OF CONTRACT
## (DUTY OF GOOD FAITH AND FAIR DEALING)

*Plaintiff Gomez v. FanDuel*

94.   Plaintiff Gomez adopts and restates paragraphs 1, 3-5, 9-59, 61, and 63-67,  as if fully set forth herein.

95.    Defendant made an offer to permit Plaintiff Class Representatives and Class Members to use their fantasy sports betting website and participate in betting.

96.   Plaintiff Class Representatives and Class Members accepted Defendant's offer.

97.   As consideration, Plaintiff Class Representatives and Class Members paid a user fee.

98.   Plaintiff Class Representatives have attached the User Agreement contract as Exhibit "A".

99.   Every contract, including the subject User Agreement has in it an inherent duty of good faith and fair dealing.

100.   Defendant breached its duty of good faith and fair dealing inherent in the User Agreement by:

(a)    failing to prevent users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)    failing to disclose to Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders,"

"scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)     failing to warn Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)     failing to prevent its own employees and DraftKings' employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     failing to disclose to Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

101.    As a direct and proximate cause of Defendant's breach of contract, Plaintiff Class Representatives and Class Members have incurred or will incur economic damages.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

  a.  certification of the proposed Plaintiffs' Classes;

  b.  appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

  c.  appointment of the undersigned counsel as counsel for the Plaintiffs' Classes;

  d.  compensatory damages;

    e.   pre and post-judgment interest;

    f.   an award of taxable costs; and,

    g.   any and all such further relief as this Court deems just and proper.

## COUNT III-DECLARATORY & INJUNCTIVE RELIEF

*Plaintiff Gomez v. FanDuel*

102.    Plaintiff Gomez adopts and restates paragraphs 1, 3-5, 9-59, 61, and 63-67, as if fully set forth herein.

103.    This is a count for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, based upon the Defendant's conduct in violating the Federal Trade Commission Act, 15 U.S.C. §§ 41-58, and to declare Defendant's multi-page internet User Agreement, Ex. B, unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

104.    Section 28 U.S.C. § 2201 provides in relevant part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

105.    28 U.S.C. § 2202 provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

106.    Plaintiff Class Representatives and Class Members are in doubt as to whether Defendant violated the Federal Trade Commission Act and as to whether Defendant's User

Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

107.    An actual case or controversy exists within the meaning of 28 U.S.C. § 2201 because Defendant engaged in conduct that violated the Federal Trade Commission Act and required Plaintiff Class Representatives and Class Members to enter into unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members. Specifically, Defendant:

(a)    engaged in "commerce" within the meaning of 15 U.S.C. § 44;

(b)    is a "corporation" within the meaning of 15 U.S.C. § 44;

(c)    engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

(d)    disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55; and,

(e)    required Plaintiff and Class Members to enter into an unconscionable User Agreement that was a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

108.    Specifically, Plaintiffs and the Plaintiff Classes seek a declaratory decree finding that Defendant:

(a)    engaged in "commerce" within the meaning of 15 U.S.C. § 44;

(b)    is a "corporation" within the meaning of 15 U.S.C. § 44;

31

(c)  engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45; and,

(d)  disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55.

109.  Plaintiff Class Representatives and Class Members also seek a declaratory decree finding that Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

110.  The aforementioned case or controversy is justiciable and actual and concerns an important issue that should be resolved.

111.  As a direct and proximate cause of the Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have suffered actual injuries in the form of economic damages.

112.  Plaintiff Class Representatives and Class Members face a further threatened injury, the continued unfair and deceptive acts described herein, which, to date, has not ceased.

113.  The requested relief would provide a remedy and redress for Plaintiffs and Plaintiff Class members' injuries.

114.  The issues in this count are ripe for judicial review because there is a genuine need to redress Plaintiffs and Plaintiff Class members' injuries and threatened injuries.

115.  The existence of another adequate remedy does not preclude a judgment for declaratory relief.

116.  Plaintiff Class Representatives and Class Members are entitled to actual damages.

117.    As a result of Defendant's conduct in this matter, Plaintiff Class Representatives were required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

118.    As a direct and proximate cause of Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have incurred liquidated economic damages in the form of entry fees and lost wagers, plus interest.

119.    Pursuant to 28 U.S.C. § 2202 upon prevailing in this declaratory decree, Plaintiff Class Representatives and Class Members are entitled to further necessary or proper relief in the form of an award to Plaintiffs' Classes of any monies lost pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a)   certification of the proposed Plaintiffs' Classes;

b)   appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c)   appointment of the undersigned counsel as counsel for the Plaintiffs' Classes;

d)   a declaration that Defendant engaged in "commerce" within the meaning of 15 U.S.C. § 44;

e)   a declaration that Defendant a "corporation" within the meaning of 15 U.S.C. § 44;

f)   a declaration that Defendant engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

g)   a declaration that Defendant disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55.

h)  a declaration that Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members;

i)  an order enjoining Defendant from engaging any further in the unlawful conduct set forth herein;

j)  an award to Plaintiffs' Classes of any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs, and other applicable law;

k)  such other relief as this Court deems just and equitable.

## COUNT IV-NEGLIGENCE

*Plaintiffs Gomez & Garcia v. Matthew Boccio FanDuel Employee Defendant Class*

120.    Plaintiffs Gomez and Garcia adopt and restate paragraphs 1-5, 14-35, 43-61, 63-68, 74, 79-87 as if fully set forth herein.

121.    Defendant Class Representative Matthew Boccio and the Defendant Class, at all times relevant, had a duty to Class Representatives and Class Members who were participating in fantasy sports betting games on Defendants FanDuel and Draft Kings' websites to act reasonably and with due care in disclosing that they had an unfair advantage, via insider information and other methods at playing the alleged games of "skill" administered Defendants FanDuel and Draft Kings. Defendant's duty includes, but was not limited to the following:

(a)    not utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(b)    disclosing to Class Representatives and Class Members they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers,"

34

"sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(c)      disclosing to FanDuel and DraftKings that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(d)      warning   Class Representatives and Class Members that they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(e)      not utilizing insider information to gain an unfair advantage over Class Representatives and Class Members;

(f)      disclosing to Class Representatives and Class Members they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members;

(g)      disclosing to FanDuel and DraftKings that they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members to gain an unfair advantage over Class Representatives and Class Members;

(h)      warning Class Representatives and Class Members that they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members; and,

(i)      exercising reasonable care in wagering on fantasy sports betting games to prevent Class Representatives and Class Members other from being harmed via Defendant's unfair advantage.

122.    Defendant Class Representative Matthew Boccio and the Defendant Class at all times relevant, failed in their duty to Class Representatives and Class Members who were participating in fantasy sports betting games on Defendants DraftKings and FanDuel's websites to act reasonably and with due care in disclosing that they had an unfair advantage, via insider information and other methods at playing the alleged games of "skill" administered by Defendants FanDuel and Draft Kings.  Defendant's breaches of its duty includes, but was not limited to the following:

(a)      utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(b)      failing to disclose to Class Representatives and Class Members they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(c)      failing to disclose to FanDuel and DraftKings that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(d)      failing to warn Class Representatives  and Class Members that they were utilizing elaborate computer programs and algorithms such as "robots," "spiders,"

"scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(e)     utilizing insider information to gain an unfair advantage over Class Representatives and Class Members;

(f)     failing to disclose to Class Representatives and Class Members they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members;

(g)     failing to disclose to FanDuel and DraftKings that they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members to gain an unfair advantage over Class Representatives and Class Members;

(h)     failing to warn Class Representatives and Class Members that they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members; and,

(i)     failing to otherwise exercising reasonable care in wagering on fantasy sports betting games to Plaintiff Class Representatives and Class Members other from being harmed via Defendant's unfair advantage.

123.    Defendant knew or should have known that its wrongful acts and omissions would cause serious injury to Class Representatives and Class Members.

124.    Defendant's conduct has directly and proximately caused economic damages to Class Representatives and Class Members.

125.    As a direct and proximate cause of Defendant's acts and omissions, Class Representatives and Class Members have incurred economic damages in the form of their user fees and wagers they placed on FanDuel and DraftKings' fantasy sports betting games.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

      a.   certification of the proposed Plaintiffs' Class and Defendant Class;

      b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

      c.   appointment of the undersigned counsel as counsel for the Plaintiffs' Class;

      d.   appointment of Matthew Boccio as the representative of the Defendant Class;

      e.   compensatory damages;

      f.   pre and post-judgment interest;

      g.   an award of taxable costs; and,

      h.   any and all such further relief as this Court deems just and proper.

## COUNT V-NEGLIGENCE

### *Plaintiff Garcia v. DraftKings*

126.    Plaintiff Garcia adopts and restates paragraphs 2, 6-39, 41, 43-58, 60 and 62-67, as if fully set forth herein.

127.    Defendant DraftKings, at all times relevant, had a duty to Plaintiffs and Class Members who were participating in its fantasy sports betting games to act reasonably and with due care in administering its fantasy sports betting games so as not to allow other users of DraftKings an unfair advantage at playing the alleged games of "skill" administered by DraftKings. Defendant's duty includes, but was not limited to the following:

      (a)     preventing users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other

38

methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)        disclosing to Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)        warning Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)        preventing its own employees and DraftKings' employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)        disclosing to Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)        warning Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

      (g)     exercising reasonable care in the administration of fantasy sports betting games to prevent users from utilizing inside information and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

128.    Defendant, at all times relevant, failed in its duty to Plaintiffs and Class Members who were participating in its fantasy sports betting games to act reasonably and with due care in administering its fantasy sports betting games so as not to allow other users of DraftKings an unfair advantage at playing the alleged games of "skill" administered by DraftKings. Defendant's breaches of its duty includes, but was not limited to the following:

      (a)     failing to prevent users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

      (b)     failing to disclose to Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

      (c)     failing to warn Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

      (d)     failing to prevent its own employees and FanDuel's employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts"

and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     failing to disclose to Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)     failing to warn Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(g)     otherwise failing to exercise reasonable care in the administration of fantasy sports betting games to prevent users from utilizing inside information and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

129.     Defendant knew or should have known that its wrongful acts and omissions would cause serious injury to Plaintiff Class Representatives and Class Members.

130.     Defendant's conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

131.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have incurred economic damages in the form of their user fees and wagers they placed on Defendant's fantasy sports betting games.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a.  certification of the proposed Plaintiffs' Classes;

b.  appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c.  appointment of the undersigned counsel as counsel for the Plaintiffs' Classes;

d.  compensatory damages;

e.  pre and post-judgment interest;

f.  an award of taxable costs; and,

g.  any and all such further relief as this Court deems just and proper.

## <u>COUNT VI-BREACH OF CONTRACT</u><br>(<u>DUTY OF GOOD FAITH AND FAIR DEALING</u>)

### *Plaintiff Garcia v. DraftKings*

132.  Plaintiff Garcia adopts and restate paragraphs 2, 6-39, 41, 43-58, 60 and 62-67, as if fully set forth herein.

133.   Defendant made an offer to permit Plaintiff Class Representative and Class Members to use their fantasy sports betting website and participate in betting.

134.  Plaintiff Class Representative and Class Members accepted Defendant's offer.

135.  As consideration, Plaintiff Class Representative and Class Members paid a user fee.

136.  Plaintiff Class Representative has attached the User Agreement contract as Exhibit "B".

137.  Every contract, including the subject User Agreement has in it an inherent duty of good faith and fair dealing.

138.     Defendant breached its duty of good faith and fair dealing inherent in the User

Agreement by:

(a)     failing to prevent users from utilizing elaborate computer programs and

algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other

methods to gain an unfair advantage over Plaintiff Class Representative and Class

Members;

(b)     failing to disclose to Plaintiff and Class Members that other users were

utilizing elaborate computer programs and algorithms such as "robots," "spiders,"

"scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage

over Plaintiff Class Representative and Class Members;

(c)     failing to warn Plaintiff Class Representative and Class Members that

other users were utilizing elaborate computer programs and algorithms such as "robots,"

"spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair

advantage over Plaintiff Class Representatives and Class Members;

(d)     failing to prevent its own employees and FanDuel's employees from

utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts"

and other methods to gain an unfair advantage over Plaintiff Class Representatives and

Class Members; and,

(e)     failing to disclose to Plaintiff and Class Members that its own employees

and FanDuel's employees were utilizing inside information, "robots," "spiders,"

"scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage

over Plaintiff Class Representatives and Class Members.

139.     As a direct and proximate cause of Defendant's breach of contract, Plaintiff Class Representatives and Class Members have incurred or will incur economic damages.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

    a.  certification of the proposed Plaintiffs' Classes;

    b.  appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

    c.  appointment of the undersigned counsel as counsel for the Plaintiffs' Classes;

    d.  compensatory damages;

    e.  pre and post-judgment interest;

    f.  an award of taxable costs; and,

    g.  any and all such further relief as this Court deems just and proper.

## COUNT VII-DECLARATORY & INJUNCTIVE RELIEF

*Plaintiff Gomez v. DraftKings*

140.     Plaintiff Gomez adopts and restate paragraphs 2, 6-39, 41, 43-58, 60 and 62-67, as if fully set forth herein.

141.     This is a count for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, based upon the Defendant's conduct in violating the Federal Trade Commission Act, 15 U.S.C. §§ 41-58,  and to declare Defendant's multi-page internet User Agreement, Ex. B, unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiff Class Representative and Class Members.

142.     Section 28 U.S.C. § 2201 provides in relevant part:

44

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

143.   28 U.S.C. § 2202 provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

144.   Plaintiff Class Representative and Class Members are in doubt as to whether Defendant violated the Federal Trade Commission Act and as to whether Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiff Class Representative and Class Members.

145.   An actual case or controversy exists within the meaning of 28 U.S.C. § 2201 because Defendant engaged in conduct that violated the Federal Trade Commission Act and required Plaintiff Class Representative and Class Members to enter into unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiff Class Representative and Class Members. Specifically, Defendant:

    (a)    engaged in "commerce" within the meaning of 15 U.S.C. § 44;

    (b)    is a "corporation" within the meaning of 15 U.S.C. § 44;

    (c)    engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

(d)     disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55; and,

(e)     required Plaintiff Class Representative and Class Members to enter into an unconscionable User Agreement that was a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

146.    Specifically, Plaintiffs and the Plaintiff Classes seek a declaratory decree finding that Defendant:

(a)     engaged in "commerce" within the meaning of 15 U.S.C. § 44;

(b)     is a "corporation" within the meaning of 15 U.S.C. § 44;

(c)     engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45; and,

(d)     disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55.

147.    Plaintiff Class Representative and Class Members also seek a declaratory decree finding that Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

148.    The aforementioned case or controversy is justiciable and actual and concerns an important issue that should be resolved.

149.    As a direct and proximate cause of the Defendant's acts and omissions, Plaintiff Class Representative and Class Members have suffered actual injuries in the form of economic damages.

150.    Plaintiff Class Representative and Class Members face a further threatened injury, the continued unfair and deceptive acts described herein, which, to date, has not ceased.

151.    The requested relief would provide a remedy and redress for Plaintiff Class Representative and Class Members' injuries.

152.    The issues in this count are ripe for judicial review because there is a genuine need to redress Plaintiff Class Representative and Class Members' injuries and threatened injuries.

153.    The existence of another adequate remedy does not preclude a judgment for declaratory relief.

154.    Plaintiff Class Representative and Class Members are entitled to actual damages.

155.    As a result of Defendant's conduct in this matter, Plaintiff Class Representative was required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

156.    As a direct and proximate cause of Defendant's acts and omissions, Plaintiff Class Representative and Class Members have incurred liquidated economic damages in the form of entry fees and lost wagers, plus interest.

157.    Pursuant to 28 U.S.C. § 2202 upon prevailing in this declaratory decree, Plaintiff Class Representative and Class Members are entitled to further necessary or proper relief in the form of an award to Plaintiffs' Classes of any monies lost pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a)  certification of the proposed Plaintiffs' Classes;

b)  appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c)  appointment of the undersigned counsel as counsel for the Plaintiffs' Classes;

d)  a declaration that Defendant engaged in "commerce" within the meaning of 15 U.S.C. § 44;

e)  a declaration that Defendant a "corporation" within the meaning of 15 U.S.C. § 44;

f)  a declaration that Defendant engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

g)  a declaration that Defendant disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55.

h)  a declaration that Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members;

i)  an order enjoining Defendant from engaging any further in the unlawful conduct set forth herein;

j)  an award to Plaintiffs' Classes of any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs, and other applicable law; and,

k)  such other relief as this Court deems just and equitable.

## **COUNT VIII-NEGLIGENCE**

*Plaintiff Gomez & Garcia v. Ethan Haskell DraftKings' Employee Defendant Class*

158.    Plaintiffs Gomez and Garcia adopt and restate paragraphs 1-8, 13, 15-35, 43-58, 60, 62-68, 75, 78 and 80-87, as if fully set forth herein.

159.    Defendant Class Representative Ethan Haskell and the Defendant Class, at all times relevant, had a duty to Plaintiffs and Class Members who were participating in fantasy sports betting games on Defendants FanDuel and Draft Kings' websites to act reasonably and with due care in disclosing that they had an unfair advantage, via insider information and other methods at playing the alleged games of "skill" administered Defendants FanDuel and Draft Kings. Defendant's duty includes, but was not limited to the following:

(a)    not utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)    disclosing to Plaintiff and Class Members they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)    disclosing to FanDuel and DraftKings that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)    warning Plaintiff and Class Members that they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)    not utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)    disclosing to Plaintiff and Class Members they were utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(g)    disclosing to FanDuel and DraftKings that they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(h)    warning Plaintiff and Class Members that they were utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(i)    exercising reasonable care in wagering on fantasy sports betting games to prevent Plaintiff Class Representatives and Class Members other from being harmed via Defendant's unfair advantage.

160.    Defendant Class Representative Ethan Haskell and the Defendant Class at all times relevant, failed in their duty to Plaintiffs and Class Members who were participating in fantasy sports betting games on Defendants DraftKings and FanDuel's websites to act reasonably and with due care in disclosing that they had an unfair advantage, via insider information and other methods at playing the alleged games of "skill" administered by Defendants FanDuel and Draft Kings.  Defendant's breaches of its duty includes, but was not limited to the following:

(a)    utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)    failing to disclose to Plaintiff and Class Members they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers,"

"sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)     failing to disclose to FanDuel and DraftKings that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)     failing to warn Plaintiff and Class Members that they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)     failing to disclose to Plaintiff and Class Members they were utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(g)     failing to disclose to FanDuel and DraftKings that they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(h)     failing to warn Plaintiff and Class Members that they were utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(i)     failing to otherwise exercising reasonable care in wagering on fantasy sports betting games to prevent Plaintiff Class Representatives and Class Members other from being harmed via Defendant's unfair advantage.

161.   Defendant knew or should have known that its wrongful acts and omissions would cause serious injury to Plaintiff Class Representatives and Class Members.

162.   Defendant's conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

163.   As a direct and proximate cause of Defendant's acts and omissions, Plaintiff and Class Members have incurred economic damages in the form of their user fees and wagers they placed on FanDuel and DraftKings' fantasy sports betting games.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Class and Defendant Class;

b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

c.   appointment of the undersigned counsel as counsel for the Plaintiffs' Class;

d.   appointment of Ethan Haskell as the representative of the Defendant Class;

e.   compensatory damages;

f.   pre and post-judgment interest;

g.   an award of taxable costs; and,

h.   any and all such further relief as this Court deems just and proper.

**COUNT IX-- VIOLATION OF 18 U.S.C. § 1962(C), THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"),**

*Plaintiffs Gomez and Garcia v. Defendants FanDuel, DraftKings, the Ethan Haskell FanDuel Employee Defendant Class and the Matthew Boccio DraftKings Employee Defendant Class, Saahil Sud Defendant Class and Drew Dinkmeyer Defendant Class*

164.     Plaintiffs Gomez and Garcia adopt and restate paragraphs 1-87 as if fully set forth herein.

165.     FanDuel and DraftKings are all "persons" under 18 U.S.C. § 1961(3).

166.     The Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings' Employee Defendant Class, Saahil Sud Defendant Class and Drew Dinkmeyer Defendant Class are all "persons" under 18 U.S.C. § 1961(3).

167.     All Defendants violated 18 U.S.C § 1962(c) by participating in or conducting the affairs of the FanDuel and DraftKings RICO Enterprise through a pattern of racketeering activity.

168.     Plaintiffs and Class Members are "person[s] injured in his or her business or property" by reason of Defendant FanDuel, Defendant DraftKings, Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Ethan Haskell FanDuel Employee Defendant Class and the Matthew Boccio DraftKings' Employee Defendant Class' violation of RICO within the meaning of 18 U.S.C. § 1964(c).

**The FanDuel and DraftKings RICO Enterprise**

169.     The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the FanDuel and DraftKings RICO Enterprise:

(a)     Defendant FanDuel, who: 1) knowingly allowed its employees to participate and win fantasy sports betting games on its own website and Defendant

DraftKings website with insider information,  the scope and nature of which they concealed from Plaintiffs and Class Members; and 2) knowingly allowed the Saahil Sud Defendant Class and Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members.

      (b)      <u>Defendant DraftKings</u>, who: 1) knowingly allowed its employees to participate and win fantasy sports betting games on its own website and Defendant FanDuel's website with insider information,  the scope and nature of which they concealed from Plaintiffs and Class Members; and 2) knowingly allowed the Saahil Sud Defendant Class and Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

      (c)      <u>The Ethan Haskell FanDuel Employee Defendant Class,</u> who: 1) knowingly participated and won fantasy sports betting games on their employer and Defendant DraftKings' website with insider information,  the scope and nature of which they concealed from Plaintiffs and Class Members; 2) knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members; 3) knowingly allowed the Saahil Sud Defendant Class and

the Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

(d)     The Matthew Boccio DraftKings Employee Defendant Class, who: 1) knowingly participated and won fantasy sports betting games on their employer and Defendant FanDuel's website with insider information,  the scope and nature of which they concealed from Plaintiffs and Class Members; 2) knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members; 3) knowingly allowed the Saahil Sud Defendant Class and the Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

(e)     The Saahil Sud Defendant Class, who: knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

(f)     The Drew Dinkmeyer Defendant Class, who: knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers,"

"sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

170.     The FanDuel and DraftKings RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose.  The FanDuel and DraftKings RICO Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

171.     While Defendants FanDuel and DraftKings participated in the conduct of the FanDuel and DraftKings RICO Enterprise, they had an existence separate and distinct from the FanDuel and DraftKings RICO Enterprise.   Further, the FanDuel and DraftKings RICO Enterprise was separate and distinct from the pattern of racketeering in which the FanDuel and DraftKings Defendants have engaged.

172.     At all relevant times, Defendants FanDuel and DraftKings operated, controlled or managed the Defendants FanDuel and DraftKings, through a variety of actions.  The FanDuel and DraftKings Defendants' participation in the FanDuel and DraftKings RICO Enterprise was necessary for the successful operation of its scheme to defraud because the FanDuel and DraftKings controlled and monitored all aspects of fantasy sports betting on their respective websites and concealed the nature and scope of insider information that was being used and the use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members and profited from such concealment.

173.    The members of the FanDuel and DraftKings RICO Enterprise all served a common purpose: to make as much money as possible on the respective websites fantasy sports betting games and maximize the revenue and profitability of the Defendants FanDuel and DraftKings and each FanDuel and DraftKings RICO Enterprise member.  The members of the FanDuel and DraftKings RICO Enterprise shared the bounty generated by the enterprise, i.e., by sharing the benefit derived from the winning bets generated by the scheme to defraud.  Each member of the FanDuel and DraftKings RICO Enterprise benefited from the common purpose: to maximize the amounts they could win and did win on fantasy sports betting on the respective websites and won more winnings from fantasy sports games to the detriment of Plaintiffs and Class Members than they would have otherwise had the scope and nature of the insider information and use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members not been concealed.

### Pattern of Racketeering Activity

174.    The FanDuel and DraftKings Defendants conducted and participated in the conduct of the affairs of the FanDuel and DraftKings RICO Enterprise through a pattern of racketeering activity that has lasted for several years beginning no later than February 2012 and continuing to this day, and that consisted of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

175.    For the FanDuel and DraftKings Defendants, the purpose of the scheme to defraud was to: 1) conceal the scope and nature of the insider information being used to generate greater winnings to be invested back into the FanDuel and DraftKings Defendants and to drive

up the stakes of each game to attract more users and therefore more user fees and generate revenue and profits; and 2) conceal the scope and nature of their allowing "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to have more entries by users to drive up the stakes of each game, to attract more users and therefore more user fees and generate revenue and profits, and to ensure that Apex predator bettors and Shark Predator bettors continued to play.

176.    By concealing the scope and nature of the insider information the FanDuel and DraftKings Defendants also maintained and boosted consumer confidence in their respective brands and fantasy sports betting, all of which furthered the scheme to defraud and helped the FanDuel and DraftKings Defendants generate more users to play their fantasy sports betting games.

177.    As detailed in this Complaint, the FanDuel and DraftKings Defendants were well aware of the use of insider information by their employees, but intentionally subjected Plaintiffs and Class Members to those risks or consciously disregarded those risks in order to maximize their profits.

178.    As detailed in this Complaint, the FanDuel and DraftKings Defendants were well aware of the use of use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods insider information by their employees, but intentionally subjected Plaintiffs and Class Members to those risks or consciously disregarded those risks in order to maximize their profits.

179.    To carry out, or attempt to carry out the scheme to defraud, the FanDuel and DraftKings Defendants have conducted or participated in the conduct of the affairs of the FanDuel and DraftKings RICO Enterprise through the following pattern of racketeering activity

that employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

(a)     The FanDuel and DraftKings Defendants devised and furthered the scheme to defraud by use of the mail, telephone, and internet, and transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, writing(s) and/or signal(s), including their respective websites, statements to the press, and communications with other members of the FanDuel and DraftKings RICO Enterprise, as well as advertisements and other communications to the Plaintiffs and Class Members; and

(b)     The FanDuel and DraftKings Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein.

180.    The FanDuel and DraftKings Defendants' pattern of racketeering activity in violation of the mail and wire fraud statutes included but was not limited to the following:

(a)     Fraudulently concealing the use of insider information by their employees and the use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other unfair methods by their employees and Apex predator and Shark Predator bettors  to transmit, or caused to be transmit (which hereinafter also means that the FanDuel and DraftKings Defendants acted with knowledge that the use of the interstate mails and wires would follow in the ordinary course of business, or such use was reasonably foreseeable), by means of mail and wire communication, and the internet, travelling in interstate or foreign commerce, between their respective offices in New York and Boston,

communications concealing the nature of their fraudulent scheme on their betting websites on a nationwide basis;

181.    The DraftKings and FanDuel Defendants' conduct in furtherance of this scheme was intentional.  Plaintiffs and Class members were directly harmed as a result of the DraftKings and FanDuel Defendants' intentional conduct.  Plaintiffs and Class members, and federal regulators, among others, relied on the DraftKings and FanDuel Defendants' material misrepresentations and omissions.

182.    As described throughout this Complaint, the DraftKings and FanDuel Defendants engaged in a pattern of related and continuous predicate acts since at least March 2012. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiffs and other Class members and obtaining significant monies and revenues from them while providing a fraudulent betting website rampant with insider information and unfair advantages to DraftKings and FanDuel Defendants' employees and Apex predators and Sharks. The predicate acts also had the same or similar results, participants, victims, and methods of commission.  The predicate acts were related and not isolated events.

183.    The predicate acts all had the purpose of generating significant revenue and profits for the DraftKings and FanDuel Defendants at the expense of Plaintiffs and Class members.  The predicate acts were committed or caused to be committed by the DraftKings and FanDuel Defendants through their participation in the DraftKings and FanDuel Defendants RICO Enterprise and in furtherance of its fraudulent scheme, and were interrelated in that they involved obtaining Class Representatives' and Class members' entry fees.

184.    By reason of and as a result of the conduct of the DraftKings and FanDuel Defendants, and in particular, its pattern of racketeering activity, Plaintiffs and Class members

have been injured in their business and/or property in multiple ways, including but not limited to the loss of their user fees and wagers on fantasy sports.

185.    The DraftKings and FanDuel Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Class and Defendant Class;

b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

c.   appointment of the undersigned counsel as counsel for the Plaintiffs' Class;

d.   appointment of Ethan Haskell and Matthew Boccio as the representatives for their respective Defendant Classes;

e.   appointment of Mr. Sud and Mr. Dinkmeyer as the representatives for their respective Defendant Classes;

f.   compensatory treble damages;

g.   pre and post-judgment interest;

h.   an award of taxable costs; and,

i.   any and all such further relief as this Court deems just and proper.

## COUNT X—CIVIL CONSPIRACY

*Plaintiffs Gomez and Garcia v. Defendants FanDuel, DraftKings, the Ethan Haskell FanDuel Employee Defendant Class and the Matthew Boccio DraftKings Employee Defendant Class, Saahil Sud Defendant Class and Drew Dinkmeyer Defendant Class*

186.    Plaintiffs Gomez and Garcia adopt and restate paragraphs 1-87 as if fully set forth herein.

187.    An agreement between two or more parties, Defendants FanDuel, DraftKings, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, and the Drew Dinkmeyer Defendant Class under the control of Defendants FanDuel and DraftKings and with the assistance and agreement of  the Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, and the Drew Dinkmeyer Defendant Class existed whereby the parties agreed to perform an unlawful act, to wit: defrauding the Plaintiffs and Class Members in this matter regarding the use of insider information and elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members as set forth herein.

188.    Defendants FanDuel, DraftKings, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class and the Drew Dinkmeyer Defendant Class overtly acted in pursuance of the conspiracy, as set forth herein, and did in fact defraud the Plaintiffs and Class Members in this matter via their acts and omissions, as set forth herein.

189.    As a direct and proximate cause of Defendants FanDuel, DraftKings, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, and the Drew Dinkmeyer Defendant Class acts and

omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover economic damages.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

     a.  certification of the proposed Plaintiffs' Class and Defendant Classes;

     b.  appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

     c.  appointment of the undersigned counsel as counsel for the Plaintiffs' Class;

     d.  appointment of Ethan Haskell and Matthew Boccio as the representatives for their respective Defendant Classes;

     e.  appointment of Mr. Sud and Mr. Dinkmeyer as the representatives for their respective Defendant Classes;

     f.  compensatory damages;

     g.  pre and post-judgment interest;

     h.  an award of taxable costs; and,

     i.  any and all such further relief as this Court deems just and proper.

## COUNT XI--VIOLATION OF THE FLORIDA DECEPTIVEAND UNFAIR TRADE PRACTICES ACT ON BEHALF OF FLORIDA SUBCLASS AGAINST DEFENDANT FANDUEL

190.    Plaintiff Gomez adopts and restate paragraphs 1, 3-5, 9-59, 61, and 63-67, as if fully set forth herein.

191.    This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

192.    Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate;

trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff is a "Consumer" within the meaning of §501.203(7), Florida Statutes.

193.    Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

194.    The advertising, soliciting, providing, offering of the fantasy sports wagering service by Defendant to Plaintiff is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

195.    Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendant's acts and omissions as well as its failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to section 501.204, Florida Statutes.

196.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff has suffered actual damage for which she is entitled to relief pursuant to section 501.211(2), Florida Statutes.

197.    As a result of Defendant's conduct in this matter, Plaintiff Class Representative was required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

198.     Plaintiff is entitled to recover reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

199.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiff has incurred economic damages and is entitled to recover monetary damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

      a.   certification of the proposed Plaintiff's class;

      b.   appointment of the Plaintiff Gomez as representatives of the Plaintiff's Class;

      c.   appointment of the undersigned counsel as counsel for the Plaintiff's Class;

      d.   actual damages;

      e.   pre and post-judgment interest;

      f.   an award of taxable costs; and,

      g.   any and all such further relief as this Court deems just and proper.

**COUNT XII--VIOLATION OF THE FLORIDA DECEPTIVEAND UNFAIR TRADE PRACTICES ACT ON BEHALF OF FLORIDA SUBCLASS AGAINST DEFENDANT DRAFTKINGS**

200.     Plaintiff Garcia adopts and restate paragraphs 1, 3-5, 9-59, 61, and 63-67, as if fully set forth herein.

201.     This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

202.     Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate;

trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff is a "Consumer" within the meaning of §501.203(7), Florida Statutes.

203.    Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

204.    The advertising, soliciting, providing, offering of the fantasy sports wagering service by Defendant to Plaintiff is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

205.    Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendant's acts and omissions as well as its failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to section 501.204, Florida Statutes.

206.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff has suffered actual damage for which she is entitled to relief pursuant to section 501.211(2), Florida Statutes.

207.    As a result of Defendant's conduct in this matter, Plaintiff Class Representative was required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

208.    Plaintiff is entitled to recover reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

209.    As a direct and proximate cause of Defendant's acts and omissions, Plaintiff has incurred economic damages and is entitled to recover monetary damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

    a.   certification of the proposed Plaintiff's class;

    b.   appointment of the Plaintiff Garcia as representatives of the Plaintiff's Class;

    c.   appointment of the undersigned counsel as counsel for the Plaintiff's Class;

    d.   actual damages;

    e.   pre and post-judgment interest;

    f.   an award of taxable costs; and,

    g.   any and all such further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all applicable claims as a matter of right.

Dated:  October 15, 2015

Respectfully submitted,

CHRISTOS LAGOS, Esq.
Florida Bar No. 149690
Lagos@attainjustice.com
JOHN PRIOVOLOS, Esq.
Florida Bar No. 690112
john@priolaw.com
LAGOS & PRIOVOLOS PLLC
66 West Flagler Street
Suite 1000
Miami, FL 33130

Tel: (305) 960-1990
Fax: (305) 891-2610
*Counsel for Plaintiffs*

-AND-


COLSON HICKS EIDSON COLSON
MATTHEWS MARTINEZ GONZALEZ
KALBAC & KANE
*Counsel for Plaintiffs*
255 Alhambra Circle
Penthouse
Coral Gables, Florida 33134
(305) 476-7400; fax (305) 476-7444

By: s/Ervin A. Gonzalez
ERVIN A GONZALEZ
Florida Bar No. 500720
Ervin@colson.com
PATRICK S. MONTOYA
Florida Bar No. 524441
Patrick@colson.com